NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAMES S., *Appellant,*

*v.*

KARINA R., A.S., P.S., *Appellees.*

No. 1 CA-JV 21-0192
FILED 1-4-2022

Appeal from the Superior Court in Maricopa County
No.  JS20436
The Honorable Virginia L. Richter, Judge *Pro Tempore Retired*

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Crider Law, P.L.L.C., Mesa
By Brad J. Crider
*Counsel for Appellee Karina R.*

---

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Acting Presiding Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

---

**C A T T A N I**, Chief Judge:

¶1        James S. ("Father") appeals the superior court's order terminating his parental rights as to his children A.S. and P.S. in this private severance action. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Karina R. ("Mother") and Father have two children together. They ended their relationship in 2015, while Mother was pregnant with the younger child. Neither parent sought family court orders to establish legal decision-making authority, parenting time, or child support.

¶3        In March 2020, Mother petitioned to terminate Father's parental rights as to both children based on abandonment, *see* A.R.S. § 8-533(B)(1), seeking to allow Mother's new husband to adopt them. Father opposed the petition. Mother, Father, and two other witnesses testified at the termination adjudication hearing.

¶4        According to Mother, despite her attempts to facilitate his relationship with the children, Father's involvement with them went from sporadic to nonexistent. Mother testified that, after their break-up in 2015, Father saw the children only a few times each year, for a few hours at a time—and he had no contact at all with them after early 2020. Mother obtained an order of protection against Father in February 2020, but the order did not include the children as protected persons and expressly allowed Father to communicate with Mother by email. She stated that she had not restricted Father's access to the children, but he nevertheless did not ask to see them very often or send cards, gifts, or letters to stay in touch. Additionally, although conceding that Father had occasionally given her a

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

few hundred dollars for the children's support, Mother asserted that Father did not provide consistent or meaningful financial support to care for the children. On the occasions that Mother asked him to do so, Father would promise to provide support but never follow through.

¶5         Father testified that he loved his children and would do anything for them but that Mother had blocked his attempts to develop and maintain a relationship with them. Father further testified that, other than some stretches of time when Mother withheld the children, he had contact with them every week from birth until Mother's order of protection prohibited further contact. Father explained that, even though he asked to see the children frequently and would arrive on time for visits, Mother often rescheduled at the last minute and prohibited any contact that was not on her terms. Father testified that he would gladly pay any child support ordered and that, even absent a support order, he had given Mother money for the children over the years and had offered to pay for anything else the children needed. Father also noted that he had bought clothes, shoes, and toys for the children directly, but Mother would not let them keep the items he bought. He acknowledged that he never filed a family court case to establish parenting time or support obligations.

¶6         The superior court granted severance, finding that Father had abandoned the children and that severance would be in the children's best interests. Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶7         The superior court is authorized to terminate a parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance and a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8–533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review a severance ruling for an abuse of discretion, deferring to the superior court's credibility determinations and resolution of conflicting facts. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶8         Father challenges the superior court's finding that he abandoned the children; he does not contest the court's best-interests determination. Abandonment, one of the statutory grounds for severance, A.R.S. § 8-533(B)(1), is defined as:

the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). Abandonment is assessed objectively based on the parent's conduct, not on the parent's subjective intent. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18 (2000). Accordingly, when faced with obstacles to a continuing parental relationship, a parent must "act persistently" to establish or develop the relationship, including by "vigorously" asserting legal rights to their child. *Id.* at 250–51, ¶¶ 22, 25. We have also recognized, however, that "a parent who has persistently and substantially restricted the other parent's interaction with their child may not prove abandonment based on evidence that the other has had only limited involvement with the child." *Calvin B. v. Brittany B.*, 232 Ariz. 292, 293–94, ¶ 1 (App. 2013).

**¶9** Relying largely on his own testimony, Father argues that he made substantial and continuous efforts to maintain his relationship with the children but was stymied by Mother's repeated interference with and restrictions on his contact with them. But the trial evidence was disputed, and although Father presented evidence weighing against a finding of abandonment, other evidence supports the superior court's contrary conclusion.

**¶10** Father asserts that he had weekly contact with the children and provided support for them in the form of cash and material goods (and offered to provide additional financial support). But Mother testified that Father saw the children, at most, only a few times annually and contributed financially only minimally and unreliably. The superior court credited Mother's account, and we defer to that court's credibility assessment. *See Jesus M.*, 203 Ariz. at 282, ¶ 12.

**¶11** Father further asserts that Mother interfered with his exercise of parental rights in a variety of ways: by only agreeing to visitation on her own terms and changing plans without notice, by failing to invite him to the children's events, by not allowing the children to call him or to keep the items he purchased for them, and ultimately, by obtaining an order of protection preventing contact with the children. But Mother testified that

she never restricted Father's access to the children or to their activities and never refused any visit he asked for (even though Father frequently changed plans once visits were scheduled). Father acknowledged at trial that he never pursued family court orders to establish and enforce the parenting time he now argues Mother was withholding. Moreover, the order of protection permitted Father to have contact with the children and allowed him to contact Mother by email, so Father could have scheduled visits but did not do so. The superior court was responsible for resolving what were, at times, "sharply disputed" evidentiary conflicts, and we do not reweigh the evidence on appeal. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (citation omitted).

## CONCLUSION

**¶12**        We affirm.

